XpresSpa Holdings, LLC v Cordial Endeavor Concessions of Atlanta, LLC (2019 NY Slip Op 02792)





XpresSpa Holdings, LLC v Cordial Endeavor Concessions of Atlanta, LLC


2019 NY Slip Op 02792


Decided on April 11, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 11, 2019

Acosta, P.J., Manzanet-Daniels, Tom, Oing, JJ.


8980 650040/17

[*1]XpresSpa Holdings, LLC, et al., Plaintiffs-Appellants,
v
Cordial Endeavor Concessions of Atlanta, LLC (formerly known as Montclair Douglass, LLC), et al., Defendants-Respondents.


Thompson Hine LLP, New York (Barry M. Kazan of counsel),
for appellants.
Gebo Law LLC, Atlanta, GA (Carl A. Gebo of the bar of the State of Georgia, admitted pro hac vice, of counsel), for respondents.



Order, Supreme Court, New York County (Charles E. Ramos, J.), entered on or about November 13, 2017, which granted defendants' motion to dismiss the complaint, unanimously modified, on the law, to deny the motion as to the causes of action for breach of contract and for breach of the implied covenants of good faith and fair dealing to the extent based on defendant Cordial Endeavor Concessions of Atlanta, LLC's (Cordial) alleged baseless complaints, as against Cordial only, and to deny the motion as to the causes of action for breach of fiduciary duty to the extent based on Cordial's alleged baseless complaints, tortious interference with business relations, and a declaratory judgment as against all defendants, and to vacate the finding that plaintiff XpresSpa Holdings, LLC lacks standing to sue and that personal jurisdiction was not acquired over defendant Shelia Edwards, and otherwise affirmed, without costs.
Plaintiff XpresSpa Atlanta Terminal A, LLC (XpresSpa Atlanta) operates an airport spa concession. Plaintiff XpresSpa Holdings, LLC (XpresSpa Holdings) is alleged to be its majority owner. Defendant Cordial was its minority owner during the relevant period. Defendants Shelia Edwards and Steven White are two of Cordial's five owners. Pursuant to its lease agreement with the airport operator, XpresSpa Atlanta was required to maintain continuous participation in the Airport Concession Disadvantaged Business Enterprise (ACDBE), which it had historically done by partnering with an ACDBE. During the relevant time period, XpresSpa Atlanta sought to fulfill the ACDBE requirement by partnering with Montclair Douglass, LLC (Montclair), a certified ACDBE and the predecessor of Cordial.
The allegations in the complaint are insufficient to support piercing Cordial's corporate veil (see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 16 NY3d 775 [2011]). As a result, defendants Shelia Edwards and Steven White may not be held individually liable on the contract-based claims (see Vandashield Ltd v Isaacson, 146 AD3d 552, 554 [1st Dept 2017]). However, individual liability may still be appropriate on the remaining claims (see Fletcher v Dakota, Inc., 99 AD3d 43, 49 [1st Dept 2012]).
The allegations that Edwards transacted business in New York and that the claims arose directly out of that business are sufficient to support a finding of personal jurisdiction at this stage (see CPLR 302[a][1]). The complaint alleges that Edwards attended three meetings in New York, accepted regular payments and operational support from plaintiffs in New York, and maintained an ownership interest in an entity (Cordial) that was partnered with and had an interest in a New York entity (XpresSpa Atlanta) (see Paradigm Mktg. Consortium, Inc. v Yale New Haven Hosp., Inc., 124 AD3d 736, 737 [2d Dept 2015]; Schomann Intl. Corp. v Northern Wireless, Ltd., 35 F Supp 2d 205, 208-211 [ND NY 1999]).
The record reflects that plaintiff XpresSpa Holdings is a member of plaintiff XpresSpa [*2]Atlanta. It thus has standing to bring suit. It is undisputed that XpresSpa Holdings acquired a membership interest from a former XpresSpa Atlanta member. Although XpresSpa Holdings never physically signed the governing Operating Agreement, it expressly assumed all of the former member's obligations and liabilities thereunder pursuant to the Contribution Agreement. This is sufficient to satisfy the Operating Agreement's requirement that all members become "signator[ies] . . . thereby agreeing to all of the terms and conditions set forth herein."
The complaint states causes of action for breach and willful breach of the Purchase and Operating Agreements. It alleges that Cordial breached these agreements by failing to obtain an affirmation of certification as an ACDBE within 90 days of closing and failing to promptly notify plaintiffs of any "material change" to its ACDBE certification. The fact that Cordial's predecessor (Montclair) had a valid, existing ACDBE certification at the time of closing is irrelevant, as the agreement specifically called for affirmation "following submission of the required legal documentation regarding Seller's change in ownership" (emphasis added).
Although the impact of these breaches is unclear - the agency responsible for approving ACDBE applications subsequently determined that Cordial had been continuously certified during the entire relevant period - even a "technical" or "minimal" breach may nonetheless yield damages (see Denker v Twentieth Century-Fox Film Corp., 45 AD2d 675, 675-676 [1st Dept 1974]). The complaint alleges that, as a result of these breaches, plaintiffs were required to expend time and money investigating Cordial's ACDBE status and finding a new ACDBE partner. Plaintiffs are not required to prove these damages at this stage (see Fielding v Kupferman, 65 AD3d 437, 442 [1st Dept 2009]).
The unjust enrichment claim fails because the relationship between the parties is governed by two written agreements (see Loreley Fin. [Jersey] No. 3 Ltd. v Citigroup Global Mkts., 119 AD3d 136, 148 [1st Dept 2014]).
The tortious interference with contract claim fails because Edwards and White were not "stranger[s]" to these agreements (see Ashby v ALM Media, LLC, 110 AD3d 459, 459 [1st Dept 2013], lv denied 22 NY3d 860 [2014]; Koret, Inc. v Christian Dior, S.A., 161 AD2d 156, 157 [1st Dept 1990], lv denied 76 NY2d 714 [1990]). The complaint's conclusory allegations are insufficient to trigger the exception to this rule (see generally Murtha v Yonkers Child Care Assn., 45 NY2d 913, 915 [1978]; Hoag v Chancellor, Inc., 246 AD2d 224, 228-230 [1st Dept 1998]).
The allegations that defendants made repeated, baseless complaints about plaintiffs and that, as a result, plaintiffs were prevented from opening other spa locations are sufficient to state a cause of action for tortious interference with business
relations (see generally 534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick, 90 AD3d 541, 542 [1st Dept 2011]). Although defendants assert an economic justification defense (see Foster v Churchill, 87 NY2d 744, 750 [1996]), the applicability of this defense is incapable of determination as a matter of law, as the documentary evidence is inconclusive with respect to the merit of defendants' complaints, which are still being litigated.
To the extent the breach of fiduciary duty claim is based on Cordial's failure to obtain an affirmation of ACDBE certification, it is duplicative of the breach of contract claims (see William Kaufman Org. v Graham & James, 269 AD2d 171, 173 [1st Dept 2000]). In addition, the complaint's allegations of improper management are too vague and conclusory (see CPLR 3016[b]; Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]). However, to the extent this claim is based on defendants' alleged baseless complaints, it is sufficiently alleged and is not duplicative of the breach of contract claims. While defendants had the right to make complaints generally, they did not have the right to make false complaints or to do so maliciously.
Similarly, to the extent the breach of the implied covenant of good faith and fair dealing claims are premised on Cordial's failure to maintain its ACDBE status, they are either conclusively refuted by the documentary evidence, which shows that Cordial was continuously ACDBE certified, or else redundant of the breach of contract claims (see Board of Mgrs. of Soho N. 267 W. 124th St. Condominium v NW 124 LLC, 116 AD3d 506, 507 [1st Dept 2014]). [*3]However, to the extent these claims are premised on Cordial's alleged baseless complaints, they are not redundant.
The fraudulent inducement claim fails because the documentary evidence conclusively establishes that defendants' representation that they would always be organized as an ACDBE was not false (see generally Braddock v Braddock, 60 AD3d 84, 86 [1st Dept 2009], appeal withdrawn 12 NY3d 780 [2009]). It does not matter whether the certification decision was based on a determination that Cordial affirmatively satisfied the ACDBE requirements or on a recognition that the relevant government agency failed to timely take the necessary steps to decertify Cordial; either way, Cordial was always an ACDBE.
The fraudulent concealment claim fails because the allegations are insufficient to raise an inference that the alleged omission "directly caused the loss about which plaintiff complains" (see Vandashield, 146 AD3d at 553 [internal quotation marks omitted]). The complaint alleges that, but for the omission, plaintiffs would never have entered into the governing Purchase and Operating Agreements. However, the claimed damages resulted not from the fact of plaintiffs' entering into these agreements, but from defendants' subsequent conduct (see Mosaic Caribe, Ltd. v AllSettled Group, Inc., 117 AD3d 421, 422 [1st Dept 2014]; Friedman v Anderson, 23 AD3d 163, 167 [1st Dept 2005]).
The complaint states a cause of action for a declaration that plaintiffs properly terminated the Purchase Agreement by October 2014 at the latest and do not owe defendants any additional monies. While these claims are hotly contested, defendants did not conclusively refute them.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 11, 2019
CLERK